**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ERROL FALCON, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO.  15-0789** |
| **ROBERT TANNER, WARDEN, RCC** | **SECTION "C"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and Procedural Background[2]

The petitioner, Errol Falcon, Jr., ("Falcon"), is a convicted inmate currently incarcerated in the B.B. "Sixty" Rayburn Correctional Center.[3]  On February 11, 2010, Falcon was indicted by a St. Charles Parish Grand Jury on eight counts of illegal possession of stolen things valued over $500

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]The record also reflects that Falcon and his state counsel spent several years and filed numerous pleadings related to Falcon's efforts to retrieve some of the items seized from his home.  Those proceedings are not detailed in this procedural history because they are irrelevant to the issue before the Court.

[3]Rec. Doc. No. 8.

and one count of illegal possession of stolen things valued over $1500.[4]  He initially entered pleas of not guilty to the charges on February 25, 2010.[5]

The record reflects that, on December 11, 2009, members of the St. Charles Parish Sheriff's Office Criminal Investigation Bureau began a physical surveillance of Falcon in connection with their investigation of a series of burglaries.[6]  During this surveillance, Detective Jody Fahrig saw a vehicle of interest travel to the Walmart store in Boutte.  Based on information received from Casey Oncale, an asset protection manager at the Walmart, the Detective learned that the vehicle belonged to a Walmart employee, Tracie Wright, who was Falcon's girlfriend.  Oncale also informed the Detective that she believed Wright and Falcon were working together to steal from Walmart during Wright's shifts working in asset protection.

On December 13, 2009, Detective Fahrig observed Falcon drive to the Walmart in Boutte, walk inside at approximately 10:00 p.m., and leave around fifty minutes later.  When he left, Detective Fahrig did not see him carrying or attempting to conceal anything.  She followed Falcon home and saw no suspicious behavior or evidence of stolen goods from the Walmart.

The next day, December 14, 2009, Detective Fahrig spoke to Oncale at Walmart and Oncale reviewed the video recording on the security camera system at the store.  Oncale reported back to Detective Fahrig that she had saw a series of actions by Falcon where he removed items from the shelves and carried them into areas of the store which were not viewable by the store's security cameras.  Oncale also reported that she could see Falcon leave the Walmart without paying for any

---

[4]St. Rec. Vol. 1 of 6, Indictment, 2/11/10 (as amended 6/5/11).

[5]St. Rec. Vol. 1 of 7, Minute Entry, 6/15/05.

[6]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal.  *State v. Falcon*, 138 So.3d 79, 83-87 (La. App. 5th Cir. 2014); St. Rec. Vol. 6 of 6, 5th Cir. Opinion, 13-KA-849, pp. 6-14, 3/12/14.

items.  Oncale visited the areas Falcon went to and found empty packaging from items consistent with the items she saw Falcon take from the shelves.  Oncale also explained to Detective Fahrig that the areas of the store not viewable by its security cameras were only known to the upper level members of management and the store's asset protection managers like herself and Wright.

Detective Fahrig went to Oncale's office to view the video, take a statement, and retrieve the video disc for her investigation.  Based on this information, she applied for and received a search warrant to search Falcon's home for items believed to have been stolen from the Walmart, including Blu-Ray DVDs, a Sony Playstation controller, several packages of printer ink, a Canon printer ink and paper package, a bottle of cologne, and two packages in the pharmacy section.  The officers executed the warrant and retrieved various items from Falcon's home.

After the Court denied Falcon's original and supplemental motions to suppress the evidence, he entered a plea of guilty on July 7, 2011, to nine counts of possession of stolen things valued over $500 pursuant to *State v. Crosby*, 338 So.2d 584 (La. 1976), which reserved his right to appeal the denial of the motions to suppress.[7]  The Court sentenced Falcon on July 20, 2011, to serve ten (10) years in prison on each of counts one and two to run consecutively, and ten (10) years in prison on each of counts three through nine to run concurrently with each other and the sentences on counts one and two.[8]  On October 28, 2011, the Court granted Falcon's motion to reduce the sentence, to which the State agreed, and resentenced Falcon to serve to fifteen (15) years in the custody of the Louisiana Department of Corrections.[9]

---

[7]St. Rec. Vol. 1 of 6, Minute Entry, 7/7/11; St. Rec. Vol. 5 of 6, Plea Transcript, 7/7/11.

[8]St. Rec. Vol. 1 of 6, Sentencing Minutes, 7/20/11; St. Rec. Vol. 5 of 6, Sentencing Transcript, 7/20/11.

[9]St. Rec. Vol. 1 of 6, Minute Entry, 10/28/11; St. Rec. Vol. 3 of 6, Motion for Redcuction of Sentence, 10/28/11; St. Rec. Vol. 6 of 6, Hearing Transcript, 10/28/11.

Later, on August 2, 2012, Falcon's counsel filed an application for post-conviction relief requesting that Falcon be granted an out-of-time appeal based on counsel's error in failing to perfect the *Crosby* appeal.[10]  At a hearing held on September 19, 2012, the Court clarified and amended Falcon's sentence to five (5) years in prison on count one to run consecutive with ten (10) years in prison on count two and ten (10) years in prison on each of counts three through nine to run concurrently with each other and with the sentences on counts one and two.[11]  The Court also granted Falcon an out-of-time appeal and eventually appointed counsel to represent him.[12] The Trial Court later denied Falcon's *pro se* request to reconsider the sentence.[13]

On direct appeal to the Louisiana Fifth Circuit Court of Appeal, Falcon's appointed counsel argued that the Trial Court erred in denying the motion to suppress the evidence based on a warrant without probable cause and the search beyond the scope of the warrant.[14] The Fifth Circuit affirmed the conviction on March 12, 2014, finding the claim to be without merit and also noting that Falcon's arguments had already been resolved in the pretrial writ applications filed by counsel following the Trial Court's initial ruling.[15]

---

[10]St. Rec. Vol. 3 of 6, Application for Post-Conviction Relief, 8/2/12.

[11]St. Rec. Vol. 1 of 6, Minute Entry, 9/19/12; St. Rec. Vol. 6 of 6, Hearing Transcript, 9/19/12.

[12]St. Rec. Vol. 1 of 6, Minute Entry, 9/9/12; St. Rec. Vol. 6 of 6, Hearing Transcript, 9/19/12; St. Rec. Vol. 3 of 6, Trial Court Order, 8/14/13.

[13]St. Rec. Vol. 6 of 6, Trial Court Order, 10/25/13; Trial Court Order 12/2/13; Letter to Court, dated 9/24/13; Letter to Court, 11/6/13 (dated 11/4/13).

[14]*Falcon*, 138 So.3d at 79; St. Rec. Vol. 6 of 6, 5th Cir. Opinion, 13-KA-849, p. 2, 3/12/14.

[15]*Id*.

The Louisiana Supreme Court denied Falcon's related writ application without stated reasons on November 14, 2014.[16]  Under federal habeas law, Falcon's conviction and sentence became final ninety (90) days later, on February 12, 2015, because he did not file an application for writ of certiorari with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1); *see also*, *Jiminez   v. Quarterman*, 555 U.S. 113, 121 (2009) (a state defendants conviction is not final for purposes of seeking federal habeas review until the conclusion of the out of time appeal process).

In the meantime, on September 4, 2014, the Trial Court denied as untimely the motion to reconsider his sentence filed by counsel.[17]  The Court also denied the motion to reduce the sentence filed by Falcon for lack of jurisdiction on May 12, 2015.[18]

## II.    Federal Habeas Petition

On February 11, 2015, the Clerk of the United States District Court for the Western District of Louisiana received Falcon's petition for federal habeas corpus relief in which he argued that the state trial court erred in denying the motion to suppress the evidence based on the lack of probable cause and the search done beyond the scope of the warrant.[19]  The petition was transferred to this

---

[16]*State v. Falcon*, 152 So.3d 877 (La. 2014); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2014-KO-0769, 11/14/14.

[17]St. Rec. Vol. 6 of 6, Trial Court Order, September 4, 2014; Motion to Reduce Sentence, 8/26/14.

[18]St. Rec. Vol. 6 of 6, Trial Court Order, 5/12/15; Motion for Reduction of Sentence, 5/8/15.

[19]Rec. Doc. No. 1.

Court on March 16, 2015, and following the correction of certain deficiencies in the submission, filed by the clerk of this Court on April 9, 2015.[20]

In its answer in opposition, the State asserts that the state court's denial of relief was not contrary to federal law and that the officers did not exceed the authority granted them by the warrant.

## III.   Generals Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[21] applies to this petition, which is deemed filed in this court by Falcon under the federal mailbox rule on February 6, 2015.[22]   The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."   *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[20]Rec. Doc. No. 8.

[21]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[22]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of the Western District filed Falcon's federal habeas petition on February 11, 2015, when it was received.  Falcon dated his signature on the form petition on February 6, 2015, which is the earliest date appearing in the record on which he could have delivered the pleadings to prison officials for mailing to the Court.  The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 376).

Despite the clear order of the Court to do so, the State did not specifically address timeliness or exhaustion nor has it asserted a basis for procedural default in its opposition. Nevertheless, the Court has determined from its review of the record that Falcon's petition is timely under the AEDPA, he exhausted state court review the claim raised here on direct appeal, and the claim is not in procedural default. However, for the following reasons, he is not entitled to relief.

**IV.**   **Standards of Review on the Merits**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so

obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted)  *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011) and *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"  *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts.  *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410.  The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id.*  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## V.      Denial of the Motion to Suppress

Falcon argues that the officers lacked probable cause to support the search warrant, obtained by unsupported and false allegations, and exceeded their authority given under the warrant when they searched his home and seized the evidence used against him.[23] The State argues that the officers did not exceed the scope of the warrant and relief on the claim was properly denied by the state courts.

It is well settled, however, that Fourth Amendment violations are generally not cognizable on federal habeas review. *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone*, the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."

---

[23]The Court rejects the State's notion that Falcon is not challenging the probable cause when a thorough reading of his petition and supporting memorandum clearly reflects that he is, especially where he argues repeatedly that the "search warrant was illegally obtained" and there was no evidence and only false allegations to support the warrant. *See e.g.*, Rec. Doc. No. 8, pp. 6-7, 8; Rec. Doc. No. 8-1, pp. 4-5, 6, 9. Falcon actually states, "there was no probable cause to search my house." Rec. Doc. No. 8-1, p. 9.

*Id.*, at 494 (footnotes omitted); *Williams v. Collins*, 16 F.3d 626, 637-38 (5th Cir. 1994). This rule applies to all claims arising under the Fourth Amendment. *See, e.g., Cardwell v. Taylor*, 461 U.S. 571, 572 (1983) (arrest); *Williams*, 16 F.3d at 637-38 (search and seizure).

A "full and fair" hearing as contemplated by *Stone* refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state court. *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (per curiam) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)). The United States Fifth Circuit has further interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity." *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002), *cert. denied*, 537 U.S. 1196 (2003). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Caver*, 577 F.2d at 1192. "[I]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under *Stone*." *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980).

Thus, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the *Stone* prohibition, without regard for whether that opportunity is actually exercised or is unsuccessful. *Janecka*, 301 F.3d at 320-21. Even if a state defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the fact that the opportunity existed suffices for the *Stone* bar to apply. *Id.* at 320.

The Fifth Circuit also has held that the *Stone* bar applies despite an error by the state court in deciding the merits of the Fourth Amendment claim.  *Swicegood v. Alabama*, 577 F.2d 1322, 1324-25 (5th Cir. 1978); *Woodard v. Thaler*, 702 F. Supp.2d 738, 759-60 (S.D. Tex. 2010) ("Even if the state court improperly applied its own procedural law in refusing to consider Woodard's Fourth Amendment argument," the *Stone* bar still applies.) (citing *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006)).  Even when the state courts err in the disposition of the Fourth Amendment claim on procedural grounds, the *Stone* bar still applies "with equal force."  *Williams*, 609 F.2d at 219-20.

Therefore, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way to prevent the actual litigation of fourth amendment claims on their merits, the rationale of *Caver* dictates that *Swicegood*'s application of *Stone* despite a mistake in adjudicating the merits must apply with equal force to procedural mistakes that thwart the presentation of fourth amendment claims."  *Williams*, 609 F.2d at 220; *see also Janecka*, 301 F.3d at 321 (same).  Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded.  *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987); *Davis*, 803 F.2d at 1372.  The petitioner in this case has not met this burden.

Falcon does not allege or demonstrate that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims.  On the contrary, he recognizes that his Fourth Amendment claims were addressed during the pretrial proceedings in state court and on direct appeal.  He therefore has not alleged or demonstrated that Louisiana state courts routinely or

systematically preclude such litigation.  Moreover, this Court has recognized that "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." *Bailey v. Cain*, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) (Duval, J.) (order adopting referenced report and recommendation).

The record also demonstrates that Falcon was granted full and complete hearings on his challenge to the validity of the warrant, search, and seizure of the evidence following the pretrial motions to suppress filed by his counsel.[24]  After several hearings and conferences with the Court on the motions, the Trial Court ultimately denied the original and supplemental motions.[25]  Falcon pursued relief from the Court's denial of his initial motion to suppress in the Louisiana Fifth Circuit and the Louisiana Supreme Court, all of which was unsuccessful.[26]  Following his plea under *Crosby*, Falcon again challenged the denial of the original and supplemental motions to suppress based on the lack of probable cause and the scope of the search on direct appeal, and relief was again denied.[27]  The Louisiana Supreme Court also denied relief following the appeal.[28]

The record, therefore, demonstrates that Falcon was provided ample opportunity to present his Fourth Amendment claims to the state courts, although his efforts were unsuccessful.  After reviewing the record, the Court finds that "the material facts were adequately developed in state

[24]*See, e.g.*, St. Rec. Vol. 1 of 6, Motion to Suppress (undated); St. Rec. Vol. 2 of 6, Supplemental Motion to Suppress, 6/15/11.

[25]St. Rec. Vol. 1 of 6, Minute Entry, 7/7/11; Minute Entry, 7/5/11; Minute Entry, 6/15/11; Minute Entry, 12/1/10; Minute Entry, 11/17/10; St. Rec. Vol. 4 of 6, Hearing Transcript, 10/20/10; Hearing Transacript, 8/4/10; Conference Transcript, 6/23/10; St. Rec. Vol. 5 of 6, Plea Transcript, 7/7/11; Hearing Transcript, 7/5/11; Hearing Transcript, 6/15/11; Hearing Transcript, 12/1/10; Hearing Transcript, 11/17/10.

[26]*State v. Falcon*, 63 So.3d 966 (La. 2011); St. Rec. Vol. 2 of 6, La. S. Ct. Order, 2011-KK-0625; 5th Cir. Order, 11-K-29, 2/24/11.

[27]*Falcon*, 138 So.3d at 79; St. Rec. Vol. 6 of 6, 5th Cir. Opinion, 13-KA-849, 3/12/14.

[28]*Falcon*, 152 So.3d at 877; St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2014-KO-0769, 11/14/14.

court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims." *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994) (quotations and citation omitted).  The fact that Falcon disagrees with the state courts' decision to deny relief is not sufficient to overcome the *Stone* bar to federal habeas corpus review.  *Janecka*, 301 F.3d at 320-21.  The review of the issue at all levels of the state courts was sufficient to meet due process requirements and to prohibit review of his Fourth Amendment claims in this federal court.  He is not entitled to habeas relief on this issue.

## VI.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Falcon's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[29]

New Orleans, Louisiana, this 25th day of August, 2015.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[29]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.